WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In the Matter of the Extradition of<br><br>Cruz Garcia Mitchel, a.k.a. Jose Parra Lugo, Cruz Garcia Mitchell, and Cruz Ignacio Garcia Michell. | No. 21-09073MJ-001-PHX-ESW<br><br>**CERTIFICATION AND COMMITTAL FOR EXTRADITION** |

This is an extradition proceeding initiated pursuant to 18 U.S.C. § 3184 by the United States of America (the "United States") at the request of the United Mexican States ("Mexico"). Mexico seeks extradition of Cruz Garcia Mitchel ("Mitchel") to answer a charge of intentional homicide perpetrated with unfair advantage. The Court held an extradition hearing on April 6, 2023. After considering the parties' briefing and oral arguments, along with the evidence received at the hearing, the Court certifies Mitchel for extradition to Mexico.[1]

## I. LEGAL STANDARDS

"Extradition from the United States is a diplomatic process that is initiated by a request from the nation seeking extradition directly to the Department of State." *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005). "After the request has been evaluated by

---

[1] This matter proceeds before the undersigned Magistrate Judge pursuant to Local Rule of Criminal Procedure 57.6(d)(15) and 18 U.S.C. § 3184.

the State Department to determine whether it is within the scope of the relevant extradition treaty, a United States Attorney, if so instructed, files a complaint in federal district court seeking an arrest warrant for the person sought to be extradited." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1207 (9th Cir. 2003).

Pursuant to 18 U.S.C. § 3184, "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States" may "conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation, and to issue a certification of extraditability to the Secretary of State." *In re Extradition of Santos*, 795 F. Supp. 2d 966, 969 (C.D. Cal. 2011). However, the Court "exercises very limited authority in the overall process of extradition" as "[e]xtradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function." *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006). Review of a district court's extradition order is "available only by way of petition for habeas corpus." *Caplan v. Vokes*, 649 F.2d 1336, 1340 (9th Cir. 1981) (explaining that "[b]ecause a certification of extraditability is not a 'final order,' no direct appeal lies from that decision").

In deciding whether to grant a request for a certificate of extradition, courts consider whether: (i) there is jurisdiction to conduct the proceeding; (ii) there is personal jurisdiction over the accused; (iii) the extradition treaty was in full force and effect; (iv) the crime fell within the terms of the treaty; and (v) there is competent legal evidence to support an extradition finding. *Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir. 1984).

## II. DISCUSSION

### A. Subject Matter and Personal Jurisdiction

Subject matter jurisdiction of this action is conferred by 18 U.S.C. § 3184. Because Mitchel was found in Phoenix, Arizona, 18 U.S.C. § 3184 also confers personal jurisdiction over Mitchel. 18 U.S.C. § 3184 (stating a court "may, upon complaint made under oath, charging any person found within [its] jurisdiction, . . . issue [its] warrant for the apprehension of the person so charged").

**B. The Extradition Treaty Between the United States and Mexico is in Full Force and Effect**

It is undisputed that there is a valid Extradition Treaty (the "Treaty") in full force and effect between the United States and Mexico. In addition, validity of the Treaty is confirmed in a sworn declaration by Tom Heinemann, Attorney Adviser in the Office of the Legal Adviser for the Department of State, Washington, D.C. (Doc. 22-1). Attached to the declaration is a copy of the Treaty. (Doc. 22-4).

**C. The Alleged Crime is Extraditable**

The charged crime at issue is intentional homicide perpetrated with unfair advantage (caused by a firearm projectile). (Doc. 30 at 91). The declaration of Attorney Adviser Heinemann states that the offense for which extradition is sought is covered under Article 2 of the Treaty. (Doc. 30 at 2, ¶ 5). Article 2, Section 1 of the Treaty states that "[e]xtradition shall take place . . . for wilful [sic] acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the **maximum** of which **shall not be less than one year**." (Doc. 22-4 at 6) (emphasis added). The crime of murder is listed in the first clause of the Appendix. (*Id.* at 20).

"Dual criminality does not require that an offense in a foreign country have an identical counterpart under the laws of the United States." *Bozilov v. Seifert*, 983 F.2d 140, 142 (9th Cir. 1992). "The name by which the crime is described in the two countries need not be the same, nor need the scope of the liability for the crimes be either coextensive or the same in both countries." *Emami v. U.S. Dist. Ct. for N. Dist. of California*, 834 F.2d 1444, 1450 (9th Cir. 1987). In determining if the conduct would be a crime in the United States, courts review "similar criminal provisions of federal law or, if none, the law of the place where the fugitive is found or, if none, the law of the preponderance of the states." *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981).

The Criminal Code for the State of Sinaloa, Mexico provides that the crime of homicide is "committed by whomever takes another's life." (Doc. 30 at 104). The United

- 3 -

States Criminal Code defines the crime of murder as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111. Neither criminal code provides that the maximum prison term for homicide/murder is less than one year. Mitchel does not dispute the issue of dual criminality. The Court finds that the charged homicide offense is an extraditable offense under the terms of the Treaty.

### D. There is Probable Cause to Extradite Mitchel

#### 1. Legal Standards

Article 3 of the Treaty states that "[e]xtradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party . . . to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place[.]" (Doc. 22-4 at 7). That is, the Court is to "assess whether, based on the evidence, the person could be brought to trial for the same crime in the United States." *Santos v. Thomas*, 830 F.3d 987, 993 (9th Cir. 2016) (citing U.S.-Mexico Extradition Treaty, art. 3, May 4, 1978, T.I.A.S. No. 9656). Jurisprudence commonly refers to this assessment as a probable cause determination.

The Court's probable cause determination in an extradition case "serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based." *Caplan v. Vokes*, 649 F.2d 1336, 1342 (9th Cir. 1981). The "probable cause finding is thus not a finding of fact in the sense that the court has weighed the evidence and resolved disputed factual issues," and "it must be upheld if there is any competent evidence in the record to support it." *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986).

As adopted by the Ninth Circuit, the probable cause standard in an extradition proceeding is "whether there [is] any evidence warranting the finding that there [is] a reasonable ground to believe the accused guilty." *Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir. 1988) (citations omitted). The burden of demonstrating probable cause rests with the extraditing country, via the United States' submissions. *Then v. Melendez*, 92 F.3d 851, 855 (9th Cir. 1996).

### 2. Analysis

It is undisputed that the documents submitted in support of Mexico's extradition request are in proper form and properly authenticated. On May 4, 2021 and July 2, 2021, the documents were certified in accordance with 18 U.S.C. § 3190 by David J. Mico, who was the United States' principal consular officer in Mexico at the time of certification. (Doc. 22-1 at 2, ¶ 6). The Court admitted the documents into evidence at the extradition hearing.

The Judicial District of Sinaloa, Sinaloa issued an arrest warrant against "Cruz Ignacio Garcia Michell or Jose Parra Lugo" for the commission of the crime of intentional homicide perpetrated with unfair advantage (caused by a firearm projectile).[2] (Doc. 30 at 91). The arrest warrant identifies the deceased victim as Avelino Lozoya Barraza. The arrest warrant states that there were two eyewitnesses to the homicide, Inocente Lozoya Verduzo ("Inocente") and Trinidad Enrique Lozoya Perez ("Trinidad"). (*Id.* at 92). The arrest warrant recounts that Inocente stated that he is the victim's son, and that he, his cousin Trinidad, and his father were working to "repair some fences for the cattle owned by Cruz Ignacio Garcia Michell or Jose Parra Lugo[.]" (*Id.*). Both Inocente and Trinidad stated that they were no more than three meters away from the accused when they saw the accused shoot and kill the unarmed victim in the daylight. (*Id.* at 93-95). Inocente and Trinidad also both reported that the accused shot Inocente, causing an injury to Inocente's neck. (*Id.*). Trinidad added that the accused has two voter registration cards with different names. (*Id.* at 94).

The extradition package contains a document completed by an agent in the Specialized Apprehension Unit of the Office of the Prosecutor General for the State of

---

[2] In his Response, Mitchel explains that he filed a Petition for Amparo in the State of Sinaloa challenging the constitutionality of any and all warrants issued against him. (Doc. 80 at 8). Mitchel states that Mexican judicial officers have declared that no arrest warrants have been issued against "Mr. Cruz Garcia Mitchel." (*Id.* at 8-9). The United States has submitted sufficient evidence showing that Mitchel has multiple aliases, including the aliases named in the arrest warrant. To the extent Mitchel may challenge the arrest warrant issued against "Cruz Ignacio Garcia Michell or Jose Parra Lugo," the Court is persuaded by the authority cited by the United States providing that it is "simply not [the Court's] job" to "adjudicate the validity of the warrant." *Noeller v. Wojdylo*, 922 F.3d 797, 806 (7th Cir. 2019).

Sinaloa. (Doc. 30 at 120-21). The document states that the Mexican Regional Attaché in Los Angeles, California informed authorities that there is a "Cruz Garcia Mitchel" residing in the United States and remitted a photograph of that individual so that it could be determined if he is the "Cruz Ignacio Garcia Michell and/or Jose Parra Lugo" charged with aggravated intentional homicide. (*Id.* at 120). On September 18, 2018, the agent located Inocente and showed Inocente a photograph of the person named "**Cruz Garcia Mitchel** and/or Cruz Ignacio Garcia Michell and/or Jose Parra Lugo." (*Id.*) (emphasis added). Inocente confirmed that the photograph depicted the man responsible for killing his father. (*Id.* at 120-21). Inocente also "stated that after Cruz committed the homicide of his father, he fled to the United States of America, [ ] where he lives with some relatives." (*Id.* at 121).

In the document, the agent further recounted that another person at the residence, Alejandra Santos Vazquez ("Alejandra"), also viewed the photograph and "fully identified [the man in the photograph] as **Cruz Garcia Mitchel** and/or Cruz Ignacio Garcia Michell and/or Jose Parra Lugo[.]" (*Id.*) (emphasis added). Upon the agent's request, Inocente and Alejandra placed their signature on the photograph of the accused in question. (*Id.*). In addition, Inocente and Alejandra wrote a statement explaining how they knew the man in the photograph. (*Id.* at 122). Alejandra stated that she knew the man because they lived at the same ranch. (*Id.*). Inocente stated that he worked with the man for five months. (*Id.*).

In his Response, Mitchel asserts that the evidence is not sufficient to establish probable cause. Mitchel recounts that in December 2018, a Deputy United States Marshal sent an email to Mexican officials that contained Mitchel's biographical data and photographs of Mitchel. (Doc. 80 at 2; Doc. 44 at 9-10). On January 2, 2019, the Mexican Regional Attaché Office in San Diego, California emailed the following response:

> In regard CRUZ IGNACIO GARCIA MICHELL aka JOSE PARRA LUGO, let me inform you that Sinaloa and INTERPOL Mexico informed us, that the subject does **NOT** match with the one we are looking for, even more Sinaloa asked and showed the victim's family the picture of the subject who is in your custody and they confirmed that he is **NOT** the one.

- 6 -

(Doc. 44 at 9) (emphasis in original). Mitchel also notes that the witnesses' declarations in the arrest warrant state that the accused has green eyes and was approximately 50 years old. (Doc. 80 at 3-4). Mitchel states that he does not have green eyes, was only 34 years old at the time of the alleged crime, has never owned property in Sinaloa, has never hired workers to do ranch work, has never owned the truck identified in the arrest warrant, and has never owned or shot a firearm. (*Id.* at 3-4, 7). During the hearing, Mitchel asserted that he is two inches shorter than the suspect as described in the arrest warrant. Mitchel also emphasized during the hearing that the 2018 photo identification occurred nearly eleven years after the alleged 2007 homicide. In addition, Mitchel asserts that there is no physical evidence linking him to the alleged homicide, such as fingerprints or DNA evidence. (*Id.* at 6).

Evidence in support of an extradition request need not be admissible at a later trial. *See Then*, 92 F.3d at 855 (noting that rules of evidence do not apply in extradition context). Courts have held that a certificate of extradition can be supported by hearsay, self-incriminating statements of accomplices, or summaries of witness statements composed by police officers or prosecutors. *Zanazanian*, 729 F.2d at 627-28; *Emami v. U.S. Dist. Ct. for N. Dist. of California*, 834 F.2d 1444, 1451 (9th Cir. 1987).

"An accused in an extradition hearing has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof." *Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981). Thus, in an extradition proceeding, courts may only consider evidence brought by the accused that is "explanatory" and not "contradictory." *Santos v. Thomas*, 830 F.3d 987, 992 (9th Cir. 2016). The Ninth Circuit has defined "explanatory evidence" as evidence that "explains away or completely obliterates probable cause[.]" *Id.* "Contradictory evidence" is evidence that "merely controverts the existence of probable cause, or raises a defense." *Id.*

"[T]here is no *per se* rule that specifies which identification procedures are 'competent' for probable cause purposes." *Quinn*, 783 F.2d at 815. "An identification

based on a single photograph may be competent evidence of identity in an extradition proceeding." *Manta v. Chertoff*, 518 F.3d 1134, 1145 (9th Cir. 2008); *see also Emami v. U.S. Dist. Ct. for N. Dist. of California*, 834 F.2d 1444, 1451 (9th Cir. 1987) ("In the Ninth Circuit it has been repeatedly held that hearsay evidence that would be inadmissible for other purposes is admissible in extradition proceedings.").

Mitchel has not presented any evidence that "explains away or completely obliterates probable cause." *Santos*, 830 F.3d at 1007. The January 2, 2019 email from the Mexican Regional Attaché Office, physical characteristics of the suspect described in the arrest warrant, and purported lack of physical evidence linking Mitchel to the alleged crime constitute "contradictory" evidence that is not considered in an extradition proceeding. *Id.* (explaining that an individual contesting extradition may not "present alibi evidence, facts contradicting the government's proof, or evidence of defenses like insanity, as this tends to call into question the credibility of the government's offer of proof").

Moreover, it is noted that the January 2, 2019 email indicating that Mitchel is not the suspect occurred after the victim's son, Inocente, identified Mitchel as the accused in September 2018. The United States has provided documentation indicating that the January 2, 2019 email was an error. On January 3, 2019, a deportation officer within the United States Department of Homeland Security, Immigrations and Customs Enforcement, Enforcement and Removal Operations ("ICE") forwarded the email to other government officials. (Doc. 44 at 7-8). On January 9, 2019, the Assistant Attaché Removals- Mexico City responded by stating that "the PGJ representative from Sinaloa reported that the daughter in law of the deceased identified your subject as the individual that shot her husband and killed her father in law." (*Id.* at 7). On November 5, 2020, the ICE deportation officer emailed other officials a picture of Mitchel that was taken at a border crossing on October 9, 2006 and requested that the victim's daughter-in-law and her husband review the photograph. (*Id.* at 6; Doc. 44 at 2, ¶ 5).

In a November 17, 2020 email, an ICE investigator relayed that the State Attorney General's office in Sinaloa "showed the photograph to victim's relatives and asked them if

they know who that person is. Both affirm it's Cruz GARCIA-Michel."[3] (Doc. 44 at 4, 16).

It is for the Mexican judicial system to evaluate Mitchel's defenses and ultimately decide whether the evidence is sufficient to convict him. Based on the eyewitness accounts and subsequent photo identifications, the Court finds that there is competent evidence establishing reasonable grounds to believe that Mitchel committed the offense of intentional homicide perpetrated with unfair advantage as charged in the arrest warrant. *See Escobedo v. United States*, 623 F.2d 1098, 1102 (5th Cir. 1980) (probable cause established in extradition hearing based on hearsay report that a witness to a crime was shown a picture of the alleged fugitive and "recognized him as one of the persons who performed the attack").

Finally, the United States has provided sufficient evidence establishing that Mitchel is the individual identified by Mexican authorities as the fugitive wanted for intentional homicide. In his declaration, an ICE deportation officer explains that in January 2019, the Office of the Mexican Attorney General copied him on an email containing two photographs and a fingerprint of the wanted fugitive. (Doc. 44 at 2, ¶ 6). In January 2019, the Phoenix Police Department confirmed that the fingerprints from Mexican authorities match Mitchel's fingerprints on file with the Department of Homeland Security. (Doc. 43 at 3, ¶ 6; Doc. 45). In addition, the United States has provided a declaration by a forensic scientist with the Phoenix Police Department who compared the fingerprints on May 10, 2021 and determined that they are from the same source. (Doc. 46).

### III. CERTIFICATION OF EXTRADITABILITY AND ORDER

Based on the foregoing, and pursuant to 18 U.S.C. § 3184,

**IT IS ORDERED** certifying the extradition of Cruz Garcia Mitchel (a.k.a. Jose Parra Lugo, Cruz Garcia Mitchell, and Cruz Ignacio Garcia Michell) to Mexico on the

---

[3] The names of the relatives interviewed are Filiberto Lozoya Verduzco and Alejandra Santos Vazquez. An English translation of their November 6, 2020 interviews states: "I am being interviewed [redacted] by investigating agents of the State Attorney General's Office . . . they showed me a photograph and they asked me if I knew said person . . . I said that the person in the photograph is named **Cruz Garcia Mitchel**, who I perfectly recognize since I saw him on several occasions." (Doc. 44 at 18, 20).

offense for which extradition was requested, and commit him to the custody of the United States Marshal pending further decision on extradition and surrender by the Secretary of State pursuant to 18 U.S.C. § 3186.

**IT IS FURTHER ORDERED** directing the Clerk of Court to forward a certified copy of this Certification and Committal for Extradition to the Office of the Legal Adviser for the United States Department of State.

Dated this 17th day of April, 2023.

_____
Honorable Eileen S. Willett
United States Magistrate Judge